483 So.2d 77 (1986)
Kenneth J. KELSON, Philip M. Waldrip, Willie J. Junior, Max L. Dickson and Grady Albritton, Individually and As and Comprising the Board of County Commissioners of Escambia County, Florida; and Joe A. Flowers, Comptroller of Escambia County, Appellants,
v.
The CITY OF PENSACOLA and the Community Redevelopment Agency, Appellees.
No. BF-144.
District Court of Appeal of Florida, First District.
February 6, 1986.
*78 J. Nixon Daniel, III, of Beggs & Lane, Pensacola, for appellants.
Don J. Caton, City Atty., and John W. Fleming, Asst. City Atty., Pensacola, for appellees.
David E. Cardwell, of Holland & Knight, Lakeland, for amicus curiae, Florida Downtown Development Assn.
SHIVERS, Judge.
Appellants, individually and as members of the Board of County Commissioners, and the County Comptroller of Escambia County (County) appeal final summary judgment on the County's complaint for declaratory relief. The action concerns The City of Pensacola's appointment of itself as a Community Redevelopment Agency pursuant to the Community Redevelopment Act of 1969, Part III of Chapter 163, Florida Statutes. The appellants as well as the appellees filed motions for summary judgment and the trial court ruled in favor of the appellees, The City of Pensacola and The Community Redevelopment Agency.
The County's able attorney raises ten issues. Upon consideration of each of them, we affirm the trial court's judgment as to all the issues, but find it necessary to discuss (1) whether Part III, Chapter 163, Florida Statutes (Community Redevelopment Act of 1969) violates Article VII, Section 9(a) of the Florida Constitution, and (2) whether this Act violates Article I, Section 10, of the Florida Constitution.
The City of Pensacola, acting through its City Council, established itself as a Community Redevelopment Agency (CRA) pursuant to Part III, Chapter 163, Florida Statutes. The express purpose of the act is to alleviate slum and blighted areas in the state. This is accomplished, in part, by a governing body making findings that a slum or blighted area exists and by following the procedures of the act whereby a plan is generated to alleviate slum and blighted conditions. The CRA is funded by revenues from taxing authorities in which the slum or blighted area lies. In calculating the amount, the annual real property valuation in the slum or blighted area is compared to the valuation of the property in the base year. That incremental amount is multiplied by the millage rate established by each taxing authority for the resultant tax increment.
Article VII, section 9(a) of the Florida Constitution prohibits the levy of County funds for purposes other than County purposes. The County urges that State of Florida ex rel. City of Gainesville v. St. Johns River Water Management District, 408 So.2d 1067 (Fla. 1st DCA), rev. denied 418 So.2d 1278 (Fla. 1982) is authority for the proposition that Escambia County should not be required to pay its tax revenues to the City for use within the Inner City when those uses are not for County purposes and the County has no input. In that case we noted:
Petitioner has suggested that the § 163.387, Florida Statutes, ad valorem tax increment *79 appropriation is merely a measurement formula which does not require the levy or allocation of ad valorem taxes, and which may be financed by funds from other sources. We are not persuaded by this argument, which ignores the financial realities of the tax increment appropriation imposed by § 163.387, and which attempts to accomplish indirectly that which may not constitutionally be done directly.
We further noted in that case that:
Although State v. Miami Beach Redevelopment Agency, 392 So.2d 875 (Fla. 1981), held that such an appropriation is not necessarily "payable from ad valorem taxation" within the context of article VII, section 12, Florida Constitution, that case did not involve an article VII, section 9 challenge, and the required appropriation was clearly related to the purpose of the taxing entity in the Miami Beach case.
We are persuaded that the allocation of funds by the County to the CRA is for County purposes. The Legislature in section 163.335; Florida Statutes, found and declared that it would be in the state's interest to reduce slum and blighted areas "and that the prevention and elimination of slums and blight is a matter of state policy and state concern in order that the state and its counties and municipalities shall not continue to be endangered by [such] areas... ." (e.s.) All of the property in the Community Redevelopment Area is in Escambia County as well as in the City of Pensacola. All who reside in the Community Redevelopment Area reside in the County. The County benefits from the reduction of economically depressed areas, which areas create burdens to the County. The County funds are expended for County purposes.
State ex rel City of Gainesville v. St. Johns is distinguishable. The taxing authority in that case was a special taxing district with its purpose solely related to water management, a purpose unrelated to and not shown to substantially benefit from community redevelopment as opposed to the case sub judice. We conclude and hold that the allocation of County funds, via tax increment, to the Community Redevelopment Agency does not violate Article VII, Section 9(a) of the Florida Constitution.
Article I, Section 10, Florida Constitution, prohibits the passage of laws impairing the obligation of contracts. The County argues that requiring the County to pay the tax increment to the CRA impairs its bond obligations to which ad valorem taxes are pledged. In State v. Miami Beach Development Agency, 392 So.2d 875 (Fla. 1981) the supreme court held that tax increment financing need not be made from ad valorem taxes and does not transgress Article VII, Section 12 of the Florida Constitution. The formula which employed the use of ad valorem taxes is merely a measure of the payment to be made to the trust fund established by CRA. The County argues that it is conceivable that the non-ad valorem taxes, i.e., funds not dedicated to the payment of various bond obligations of the County, may prove to be insufficient. The fallacy of the County's argument lies in the fact that it ignores the nature of the tax increment formula. The monies paid into the trust fund of the Community Redevelopment Agency by the County are determined by multiplying the increase in value of the real estate by the County established millage rate. The Community Redevelopment Agency creates more revenue by increasing the property value. Such appropriation does not affect any contract or obligation of the County, since the increase in land value creates its own source of revenue, which, although it may be pledged to ad valorem obligations, frees up non-ad valorem funds in a concomitant amount.
We affirm the constitutionality of the Community Redevelopment Act of 1969. We also affirm the trial court's determination of the factual issues, since the County raised no genuine issues of material fact.
AFFIRMED.
MILLS and ZEHMER, JJ., concur.